UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'

| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
|---|---|---|---|
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Katherine Stride | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Benjamin Katzenellenbogen<br>Jenna Kelleher | Kent Schmidt |

**Proceedings:**   DEFENDANTS' MOTION TO DISMISS (Dkt. No. 29, filed September 16, 2014)

## I.   INTRODUCTION

This case concerns a trademark dispute related to the board game "Othello." On January 24, 2014, plaintiff Kabushiki Kaisha MegaHouse ("plaintiff" or "MegaHouse"), a Japanese corporation, filed this lawsuit. Dkt. No. 1. On August 7, 2014, MegaHouse filed the operative First Amended Complaint ("FAC") against defendants Anjar Co. LLC ("Anjar"), Becker Associates, LLC, Jonathan Becker, Patti Becker, J.A.R. Games, Co., and Anjar Co. Dkt. No. 21. In brief, the FAC alleges that defendants misappropriated certain trademarks connected to the Othello game, the most important of which for present purposes is the phrase "A MINUTE TO LEARN . . . A LIFETIME TO MASTER" (the "MINUTE TO LEARN" mark). See generally id. The FAC asserts claims for (1) false designation of origin and false advertising, 15 U.S.C. § 1125(a); (2) common law unfair competition including trademark and trade dress infringement; (3) statutory unfair competition, Cal. Bus. & Prof. Code § 17200, et seq., (4) specific performance; (5) imposition of a constructive trust, Cal. Civ. Code § 2224; (6) breach of contract; (7) breach of fiduciary duty; and (8) a declaration regarding contractual obligations. Id.

On September 16, 2014, defendants filed a motion to dismiss all claims based on plaintiff's assertion of ownership of the MINUTE TO LEARN mark, as well as plaintiff's claim for breach of fiduciary duty. Dkt. No. 29. On September 29, 2014, plaintiff filed an opposition. Dkt. No. 31. On October 6, 2014, defendants filed a reply. Dkt. No. 32.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

On October 20, 2014, the Court held a hearing at which counsel for the parties appeared.[1] After considering the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

The FAC alleges the following relevant facts, which the Court accepts as true for purposes of this motion only.  Plaintiff is the owner by assignment of all worldwide trademark rights (outside of Japan) in the mark "OTHELLO" for use in connection with games.  FAC ¶ 13.  In the early 1970s, Goro Hasegawa ("Hasegawa") created the Othello game ("the game"), and he "or another individual whose actions inured to the benefit of" plaintiff's predecessors-in-interest conceived of a Japanese phrase that was later translated into English as "A MINUTE TO LEARN . . . A LIFETIME TO MASTER."[2] Id. ¶¶ 14–15.  The game was "launched in Japan in 1973, and in the U.S. shortly thereafter."  Id. ¶ 16.  Beginning in 1974, plaintiff obtained the exclusive right to license the game and register the OTHELLO mark outside of Japan.  Id. ¶ 17.  Plaintiff currently owns numerous OTHELLO-related trademark registrations around the world.  Id. ¶ 20.

The MINUTE TO LEARN mark was originally registered in the U.S. by a licensee of plaintiff's.  Id. ¶ 18.  Plaintiff alleges that since 1973, plaintiff, "directly or indirectly through authorized distributors," has "continuously used the OTHELLO mark, the MINUTE TO LEARN mark, and the OTHELLO trade dress for board games and other goods," including "use in U.S. commerce."  Id. ¶¶ 24, 62.  Plaintiff contends that it owns the MINUTE TO LEARN trademark in the U.S. and is the "legal and/or equitable owner" of (1) U.S. Registration No. 1055196 for the OTHELLO mark, and (2) U.S. Registration

---

[1]At that hearing, the Court distributed a tentative order indicating the Court's intention to deny the motion to dismiss as to claims premised on plaintiff's ownership of the MINUTE TO LEARN mark, but grant the motion as to plaintiff's claim for breach of fiduciary duty.  At oral argument, plaintiff's counsel directed the Court's attention to allegations in the complaint that had not been highlighted in plaintiff's opposition brief.  After further consideration, the Court concludes, as explained below, that the motion should be denied with regard to plaintiff's fiduciary duty claim as well.

[2]Plaintiff alleges that plaintiff acquired the trademark rights and registrations for OTHELLO in 2005 from a predecessor-in-interest.  FAC ¶ 19.  For simplicity's sake, "plaintiff" hereinafter refers to MegaHouse and any predecessors-in-interest.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

No. 1366802 for the MINUTE TO LEARN mark, which was originally registered on October 22, 1985, by a licensee of plaintiff's. Id. ¶¶ 21, 23, 61.

In January 1975, plaintiff authorized defendant Anjar to manufacture and sell the game in the U.S. and Canada. Id. ¶ 28. From 1975 until January 2013, Anjar used the OTHELLO and MINUTE TO LEARN marks, as well as related trade dress, under the authorization of plaintiff. Id. ¶ 29. Plaintiff alleges that Anjar was a "licensee and sub-licensor" of the OTHELLO mark, the MINUTE TO LEARN mark, and the OTHELLO trade dress during this time. Id. ¶ 34. From 1975 until 1999, Anjar paid royalties to plaintiff for this use. Id. ¶ 30. On February 25, 1993, Jonathan Becker wrote a letter on behalf of Anjar stating, "Anjar represents the rights of [one of plaintiff's predecessors-in-interest] for Othello throughout the world." Id. ¶ 33.

The FAC further alleges that on December 19, 1997, plaintiff entered into an agreement with Anjar that stated "that none of Defendants were the true owner of U.S. Trademark Registration No. 1055196, and that Anjar was required to return formal legal title in the registration upon termination of the underlying license to the OTHELLO mark." Id. ¶ 88. Moreover, this "agreement required Anjar to convey formal legal title in the registration to MegaHouse upon MegaHouse's termination for cause of any and all license Anjar may have had to the OTHELLO trademark." Id. ¶ 91. According to plaintiff, "Anjar was also obligated to convey formal legal title in the registration to MegaHouse when the 1997 agreement could no longer be maintained." Id. The FAC alleges that "[t]o the extent Defendants have legal title to [the U.S. trademarks at issue], Defendants are the constructive trustees [of those trademarks], and hold them and all property or income derived from them, on behalf of MegaHouse." Id. ¶ 98.

In September 2012, Anjar filed revocation actions against plaintiff's trademark registrations for the OTHELLO mark in the European Union and United Kingdom.³ Id. ¶ 34. On January 11, 2013, plaintiff sent a letter to Jonathan Becker at Anjar advising that Anjar's license to use the OTHELLO mark would terminate on January 21, 2013, unless Anjar provided written confirmation that the aforementioned revocation proceedings had been withdrawn. Id. ¶ 36. On January 18, 2013, Hasegawa sent a letter to Jonathan

---

³Plaintiff alleges that the European Union proceeding was decided in plaintiff's favor and referred to "Anjar's 'awareness that it is a licensee as far as the sign OTHELLO is concerned.'" FAC ¶ 39. Plaintiff also alleges that Anjar withdrew its United Kingdom revocation request in December 2013. Id. ¶ 40.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

Becker stating that Hasegawa's company had "licensed the Othello game exclusively to" plaintiff, that plaintiff "appointed [Anjar] as a licensee and licensing agent of the game and trademark OTHELLO," and that Anjar's claimed ownership of the game and OTHELLO mark infringed rights of Hasegawa's company and plaintiff.  Id. ¶ 37.  On February 5, 2013, plaintiff sent another letter to Jonathan Becker advising that contractual relationships between plaintiff and Anjar regarding the game had been terminated on January 21, 2013, and that continued use of the OTHELLO mark would constitute infringement.  Id. ¶ 38.

Plaintiff alleges that defendants are "engaged in the unauthorized business of licensing, selling, offering to license, or offering to sell goods . . .in connection with the OTHELLO mark, the MINUTE TO LEARN mark, and the OTHELLO trade dress."  Id. ¶ 41.  Plaintiff contends that this activity constitutes willful infringement likely to injure plaintiff and cause consumer confusion.  See id. ¶¶ 44–47.  Plaintiff also asserts that defendants breached a "license agreement entered into between Anjar and MegaHouse's predecessor-in-interest" as well as fiduciary duties owed to plaintiff by actions including failing to pay royalties, infringing plaintiff's marks, and failing to convey to plaintiff "legal title to U.S. Trademark Registrations No. 1055196 [the OTHELLO mark] and/or 1366802 [the MINUTE TO LEARN mark]."  See id. ¶ 102–114.

### III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

## V.  DISCUSSION

### A.  Plaintiff's Claims Premised on Ownership of the MINUTE TO LEARN Mark

Plaintiff's first, second, third, fifth, and sixth claims for relief are based in part on defendants' alleged infringement of the MINUTE TO LEARN mark. Defendants argue that these claims should be dismissed with regard to the MINUTE TO LEARN mark because defendants own an incontestable U.S. registration for the mark, No. 1,366,802.

Under section 15 of the Lanham Act, 15 U.S.C. § 1065, a mark may become "incontestable" through five years' continuous use after federal registration and compliance with certain statutory formalities. See 2 McCarthy on Trademarks and Unfair Competition § 11:44 (4th ed. 2004). An incontestable registration is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce . . . subject to [certain] defenses or defects." 15 U.S.C. § 1115(b). As commentators have noted, however, "[t]he label 'incontestable' is misdescriptive and misleading" because a large number of statutory affirmative defenses apply.[4] 6 McCarthy § 32:147. If one of these statutory defenses is proven, "the evidentiary status of the registration drops down from 'conclusive' to 'prima facie' and [the challenging party] is permitted to prove 'any legal or equitable defense or defect

---

[4]Calling incontestability a "Swiss cheese" rule, McCarthy explains:

> Over a half-century after the Lanham Act became law, there is still doubt as to the exact scope of which challenges are foreclosed and which are not by the status of "incontestability." The structure of the Act is to list those defenses or challenges which are not foreclosed. While § 33(b) lists nine exceptions to incontestability, it seems clear that § 33(b) incorporates the exceptions of § 15 by reference,6 and § 15 in turn incorporates § 14(3) and (5) by reference, and § 14(3) in turn incorporates the exceptions of § 2(a), (b), and (c) and § 4. As many as 21 possible exceptions to incontestability have been listed, although this may involve some double counting.

6 McCarthy § 32:147 (footnotes omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

which might have been asserted if such mark had not been registered.'" Id. § 32:153 (internal citation omitted).

Defendants point to Anjar's trademark registration for the MINUTE TO LEARN mark in connection with a "parlor-type board game." Def. Req. Judicial Not. ("DRJN") Ex. A.[5] This registration indicates that the mark was first used in 1976 and registered in 1985, and that a section 15 affidavit was submitted. Based on this registration, defendants argue that the aforementioned claims should be dismissed because Anjar is "conclusively presumed to be the owner of the MINUTE TO LEARN mark" and the FAC does not plead any ground set forth in Section 33(b) of the Lanham Act. Plaintiff responds that the incontestable registration does not foreclose its claims for three reasons, each of which the Court discusses in turn.

      1.     Senior User

First, plaintiff argues that Anjar's registration cannot be incontestable against plaintiff because plaintiff is a senior user of the mark. Plaintiff points to 15 U.S.C. § 1065, which states that a mark may become incontestable "except to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration." Plaintiff argues that this is one of the conditions "subject to" which the incontestable right attaches "upon filing of the required affidavit." Id. Further, plaintiff contends that between the mark's first use in 1976 and Anjar's registration of it in 1985, "MegaHouse, as the owner and licensor of the rights in Othello, acquired the trademark rights associated with the promotion and use of the MINUTE TO LEARN mark by virtue of . . . [the] activities" of its licensees, including Anjar.

In response, defendants cite Wallace Int'l Silversmiths Inc. v. The Wallace Cos. Inc. for the proposition that an "incontestable registration cannot be challenged on the grounds of a party's prior use." 7 U.S.P.Q.2d 1723 (N.D. Ala. 1988); see also Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc., 841 F. Supp. 1339, 1352 n.16 (E.D.N.Y. 1994) ("Defendants[] also seem to assert that their purported prior use is

---

    [5]The Court takes judicial notice of the proffered trademark registration as a "matter[] of public record" pursuant to Fed. R. Evid. 201. See Mack v. S. Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.1986).

Case 2:14-cv-00598-CAS-CW   Document 36   Filed 10/20/14   Page 8 of 19   Page ID #:412

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL                    'O'

| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
|---|---|---|---|
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

grounds for cancelling plaintiff's registration. To the extent defendants so state, their reliance is misplaced. An incontestible federal registration may not be challenged upon the basis that the mark is inferior in priority to defendants' previously acquired rights.").

Although there does seem to be some inconsistency in the cases,[6] the law is clearly on plaintiff's side in the Ninth Circuit. In Watec Co., Ltd. v. Liu, 403 F.3d 645 (9th Cir. 2005), parties who had been found liable for trademark infringement argued that they were not liable because the plaintiff had not made the requisite showing to overcome the alleged infringers' incontestable federal trademark registration. The Ninth Circuit explained that "[o]ne of the statutory exceptions to 'incontestability' is set forth in the introductory clause of § 1065, which provides that a registration is not incontestable to the extent that it infringes on another's valid rights in the mark acquired under state law by a use continuing from a date prior to federal registration of the mark." Id. at 652. Citing Casual Corner Assocs., Inc. v. Casual Stores of Nevada, Inc., 493 F.2d 709 (9th Cir. 1974), the court explained that "a litigant claiming § 1065 senior rights in a mark must show (1) that his or her 'use of the mark began before its registration and publication'; and (2) 'that there has been continuing use since that time.'" Id. at 653. Therefore, to the extent that defendants contend that an incontestable registration trumps rights acquired through senior use, that argument is without merit. See also Spin Master, Ltd. v. Zobmondo Entertainment, LLC, 944 F. Supp. 2d 830, 851 (C.D. Cal. 2012) ("Even an incontestable mark under § 1065 is subject to a 'valid right acquired under state law by a use continuing from a date prior to the federal registration and publication.'" (quoting Casual Corner, 493 F.2d at 711)); Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc., 923 F. Supp. 433, 438 (S.D.N.Y. 1996) ("Even assuming that [the] mark is incontestable . . . it would not be incontestable against a senior user.").

Applying these principles, plaintiff has pled at least one statutory defense that, if proved, would allow it to overcome the conclusive evidentiary status of the incontestable registration. Plaintiff contends that since 1973, plaintiff has "directly or indirectly through authorized distributors" used the MINUTE TO LEARN MARK. FAC ¶ 24. Plaintiff further alleges that Anjar used the MINUTE TO LEARN mark with plaintiff's authorization as a licensee of the mark as early as 1975, paying royalties to plaintiff for the licensed use. Id. ¶¶ 29, 30, 34. "A licensee's use inures to the benefit of the licensee-

---

[6]McCarthy suggests that Wallace "must be read in the light of the exception under § 15 of the Lanham Act for previous common law uses." 6 McCarthy § 32:145 n.9.

Case 2:14-cv-00598-CAS-CW   Document 36   Filed 10/20/14   Page 9 of 19   Page ID #:413

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL      'O'

| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
|---|---|---|---|
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

owner of the mark and the licensee acquires no ownership rights in the mark itself. This is the rule at common law and has been codified in the Lanham Act § 5." 3 McCarthy § 18:45.50 (footnotes omitted). Therefore, plaintiff argues that it acquired prior rights in the MINUTE TO LEARN mark through the mark's use by its licensees, which inured to plaintiff's benefit.

Defendants respond that plaintiff has pled insufficient factual detail to support its claim that Anjar was a licensee of the MINUTE TO LEARN mark. See Reply at 2-3. The Court disagrees, finding the licensing allegations discussed above sufficient to put defendants on notice of the claims against them and plausibly give rise to a right to relief. Therefore, plaintiff has pled use that is both senior to the incontestable registration and continuous, see Watec, 403 F.3d at 653, and dismissal of plaintiff's claims premised on the MINUTE TO LEARN mark is unwarranted.

    2.    Licensee Estoppel

Another statutory defense to an incontestable registration is "[t]hat equitable principles, including laches, estoppel, and acquiescence, are applicable." 15. U.S.C. § 1115(b)(9). Plaintiffs argue that because Anjar is alleged to have been plaintiff's licensee of the MINUTE TO LEARN mark, defendants are estopped from claiming to have acquired any rights in the mark during the life of the license. It is a "long settled principle of law that a licensee . . . of a trademark or trade name may not set up any adverse claim in it as against its licensor. Such use as a recognized licensee . . . sets up no rights in that licensee adverse to the terms of the license and the actual circumstances of the use." Pac. Supply Co-Op v. Farmers Union Central Exchange, Inc., 318 F.2d 894, 908–09 (9th Cir. 1963).

Similar to their argument against senior use, defendants protest that plaintiff has not adequately pled a license agreement involving the MINUTE TO LEARN mark so as to avail themselves of an estoppel defense. Defendants argue that the FAC "contain[s] only conclusory assertions" and "no specific facts identifying the license, such as the parties, the date or any of its provisions." Reply at 4. But paragraphs 28 through 31 of the FAC allege that in January 1975, "one of MegaHouse's predecessors-in-interest authorized Defendant Anjar to manufacture and sell" the game, and that "[f]rom 1975 to January 2013, Anjar used . . . the MINUTE TO LEARN mark . . . under the authorization of MegaHouse and/or one of its predecessors-in-interest." The FAC also alleges that Anjar paid royalties related to this use. At the motion to dismiss stage, these allegations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                              'O'

| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
|---|---|---|---|
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

are sufficient to plead the existence of a license. Moreover, a license for a trademark can be implied from the parties' conduct even absent a contract specifically covering the mark at issue. See Dep't of Parks & Rec. for Cal. v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1129 (9th Cir. 2006) (citing De Forest Radio Tel. & Tel. Co. v. United States, 273 U.S. 236, 241 (1927)). Because defendants advance no other arguments against plaintiff's asserted licensee estoppel, the Court finds that the motion to dismiss should be denied on this ground as well.

      3.      Contractual Rights

Finally, plaintiff argues that it has alleged contractual rights controlling of ownership of the MINUTE TO LEARN mark. Because registrations are evidence of ownership and do not in themselves create ownership rights, "the law will not permit [registration-related] presumptions to supercede a contractual arrangement between the parties." Blue Planet Software, Inc. v. Games Int'l, LLC, 334 F. Supp. 2d 425, 436-37 (S.D.N.Y. 2004).

Under California law, the essential elements of a contract are: (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) a sufficient cause of consideration. Cal. Civ. Code § 1500; see Weddington Prods. v. Flick, 60 Cal. App. 4th 793, 811 (1998).[7] Defendants argue that although they concede a licensing relationship existed between the parties, plaintiff has not pled a contractual relationship extending to the MINUTE TO LEARN mark. But the FAC alleges that Anjar and plaintiffs had a licensing arrangement under which "Anjar used the OTHELLO mark, the MINUTE TO LEARN mark, and the OTHELLO trade dress under the authorization of MegaHouse and/or one of its predecessors-in-interest." FAC ¶ 29. Read in the light most favorable to plaintiff, these allegations are sufficient to plead an agreement. To the extent that defendant contests that any licensing agreement covered the MINUTE TO LEARN mark, that is an argument better-suited for summary judgment or trial.

---

[7] Defendants cite the same California contract law. See Reply at 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

For the foregoing reasons, defendants' motion to dismiss claims premised on plaintiff's alleged ownership of the MINUTE TO LEARN mark is DENIED.[8]

### B. Plaintiff's Claim for Breach of Fiduciary Duty

Next, defendants argue that plaintiff has failed to state a claim for breach of fiduciary duty. Much of the briefing on this claim concerns which state's law should apply—understandable in a case where a Japanese plaintiff has sued in a federal court sitting in California defendants who reside in New York and Connecticut.[9] Defendants assert that "[n]one of the contracts alleged to be at issue have a choice of law provision selecting California as the governing law," and plaintiff does not contend otherwise. Memo. Supp. Mot. Dismiss at 11. Defendants assert that New York law should govern, but that even if the Court applies another state's law, plaintiffs have failed to state a claim for breach of fiduciary duty. Plaintiff asserts that California law should control, but that no matter the choice of law, defendants' motion to dismiss the breach of fiduciary duty claim lacks merit.

#### 1. Choice of Law

In a federal question action such as this one "involv[ing] supplemental jurisdiction over state law claims, [courts] apply the choice of law rules of the forum state–here, California." Paulsen v. CNF Inc., 559 F.3d 1061, 1080 (9th Cir. 2009). California

---

[8]Plaintiff's opposition argues that Anjar's acquisition of the mark from a previous sub-licensee was improper. Opp'n at 12. But as defendants point out in their reply, the FAC does not allege or fairly imply this, so the Court does not consider this additional argument in opposition to the motion to dismiss.

[9]The FAC alleges: that MegaHouse is organized under the laws of and has its principal place of business in Japan; that Anjar is organized under the laws of Delaware and has its principal place of business in Connecticut; that Becker Associates is organized under the laws of Delaware and has its principal place of business in Connecticut; and that Anjar Co. is organized under the laws of New York and has its principal place of business in Connecticut. FAC ¶¶ 6–12. Because the parties did not brief the interests of Connecticut and Delaware in applying their laws, the Court analyzes only California and New York law below.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

applies a three step "governmental interest" analysis in determining choice of law questions:

> (1) the court examines the substantive laws of each jurisdiction to determine whether the laws differ as applied to the relevant transaction, (2) if the laws do differ, the court must determine whether a true conflict exists in that each of the relevant jurisdictions has an interest in having its law applied, and (3) if more than one jurisdiction has a legitimate interest ... the court [must] identify and apply the law of the state whose interest would be more impaired if its law were not applied.

Downing v. Abercrombie & Fitch, 265 F.3d 994, 1005 (9th Cir. 2001) (internal quotation marks omitted). "[I]f the relevant laws of each state are identical, there is no problem and the trial court may find California law applicable." Washington Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906, 920 (2001). "Only if the trial court determines that the laws are materially different and that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied." Id. (emphasis in original). Here, the first step of the government interest analysis means surveying each state's law on the circumstances under which a fiduciary duty can arise, with an eye to plaintiff's allegation that defendants became fiduciaries through Anjar's long relationship as "licensee and licensing agent," through which relationship plaintiff alleges that Anjar "represent[ed] the rights of [plaintiff] for Othello throughout the world." As discussed below, the Court concludes that the laws do not differ in respects relevant to this motion; therefore, the Court need not proceed to steps two and three of the analysis at this point.

      a.     California

In California, a fiduciary relationship is "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit fo the other party." Herbert v. Lankershim, 9 Cal. 2d 409, 483 (1937). "[T]he existence of a fiduciary relation is a question of fact which properly should be resolved by looking to the particular facts and circumstances of the relationship at issue." In re Daisy Systems Corp., 97 F.3d 1171, 1178 (9th Cir. 1996) (citing Kudokas v. Balkus, 26 Cal. App. 3d 744 (1972)). A fiduciary duty exists where a person either (1) "knowingly undertake[s] to act on behalf of and for the benefit of another" or (2)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

"enter[s] into a relationship which imposes that undertaking as a matter of law." Comm. on Children's Television, Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 221 (1983).

In City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375 (2008), the California Supreme Court clarified each of these circumstances. In that case, plaintiff City of Hope had entered into a contract with Genentech whereby City of Hope would give Genentech synthetic DNA for the purpose of manufacturing and selling polypeptides, as well as exclusive ownership of related patents, in exchange for Genentech's provision of research funding and royalties from related sales. See id. at 386. Genentech also had the contractual right to transfer patents and patent licenses. Id. First, finding "no indication" that Gententech had entered into the contract "with the view of acting primarily for the benefit of City of Hope" or "knowingly" undertaken the "obligations of a fiduciary," the court reasoned that the contract instead suggested a "common goal" of "achiev[ing] a mutually beneficial arrangement." Id. The court then turned to whether the parties' relationship could have imposed fiduciary duties as a matter of law. The court explained that "[e]xamples of such relationships are a joint venture, a partnership, or an agency."[10] Id. In contrast, the court held that "fiduciary obligations are not necessarily created when one party entrusts valuable intellectual property to another for commercial development in exchange for the payment of compensation contingent on commercial success," and that the trial court had erred in instructing the jury to the contrary. Id. at 391 (emphasis added). The court also reasoned that although the plaintiff was somewhat vulnerable "because it had to rely on Genentech's superior ability in obtaining patents and in marketing products," that did "not necessarily create fiduciary obligations, which generally come into play when one party's vulnerability is so substantial as to give rise to equitable concerns underlying the protection afforded by the law governing fiduciaries." Id. at 389.

Wolf v. Superior Court, 107 Cal. App. 4th 25 (2003), also involved intellectual property rights. In that case, the court approved a trial court's determination on a demurrer that no fiduciary relationship existed where an author assigned to Disney his rights to a novel and its characters in exchange for royalties from a motion picture based

---

[10]This list is not exhaustive. The California Court of Appeal has explained that "[t]raditional examples of fiduciary relationships in the commercial context include trustee/beneficiary, directors and majority shareholders of a corporation, business partners, joint adventurers, and agent/principal." Wolf v. Superior Court, 107 Cal. App. 4th 25, 30 (2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
|---|---|---|---|
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

on the novel.  Id. at 30–34.  The court found that none of the following circumstances gave rise to a fiduciary duty in that case: (1) a contingent entitlement to future compensation; (2) a profit-sharing arrangement; (3) a contractual right to an accounting; or (4) the bare allegation that the plaintiff "reposed trust and confidence" in Disney.  See id.  The court reasoned that there was no allegation of a joint venture or similar relationship and that Disney was free to "exploit those rights [transferred by the author] or not exploit them as it saw fit.  Disney was under no obligation to maximize profits from the enterprise or obtain [the author's] approval for its contracts."  Id. at 32–33.  The court also rejected the plaintiff's argument that "a fiduciary duty exists because Disney's exploitation of the characters, if profitable, would inure to the parties' joint benefit."  Id. at 33.

Despite the rule that something more than an ordinary commercial arrangement is needed to give rise to fiduciary duties, a business relationship can sometimes create fiduciary obligations.  For example, in Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC, No. C 07-00554 JSW, 2007 WL 3231724  (N.D. Cal. 2007) (applying California law), Peter and David Viviani decided to divide their family business, with Peter owning and running the retail operations (Sonoma Cheese Factory) and David running the manufacturing and distribution operations (Sonoma Foods).  In the agreement dividing the company, Sonoma Foods agreed to transfer trademarks associated with the retail operations.  Id. at *1.  Sonoma Cheese Factory alleged that Sonoma Foods failed to transfer certain trademarks and otherwise manage the trademarks in its best interests.  Id.  The court denied a motion to dismiss the fiduciary duty claims premised on the following allegations:

> [Claimants] allege that "Sonoma Foods knowingly and voluntarily undertook to act on behalf of and for the benefit of Sonoma Cheese Factory and Peter with respect to the management of Sonoma Cheese Factory's trademarks."  They further allege that Sonoma Cheese Factory and Peter trusted Sonoma Foods to act on their behalf and for their benefit with respect to trademark matters because Sonoma Foods had experience in trademark matters and previously had managed Sonoma Cheese Factory's trademarks.  Moreover, Peter Viviani had worked closely with David Viviani in David Viviani's capacity as President of Sonoma Foods, and Peter trusted in his father-son relationship with David Viviani.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

Id. (citation omitted). The court reasoned that "such alleged conduct extends beyond the obligations" alleged in the relevant contract. Id. at *5. See also Michelson v. Hamada, 29 Cal. App. 4th 1566, 1680-81 (1994) (finding sufficient evidence to support the existence of a fiduciary duty going "beyond a mere contractual relationship" where the plaintiff, a young surgeon, gave defendant's professional corporation complete control over the business end of his practice and "considered Hamada to be his trusted friend").

Thus, California law generally does not impose fiduciary duties on commercial parties in arms' length relationships, but may find a fiduciary relationship in special situations, such as when unusual circumstances give rise to an unusual level of trust or vulnerability.

   b. New York

Under New York law, a fiduciary duty exists "when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another." Reuben H. Donnelley Corp. v. Mark I Marketing Corp., 893 F. Supp. 285, 289 (S.D.N.Y. 1995). "The existence of a fiduciary duty normally depends on the facts of a particular relationship, therefore a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)." Abercrombie v. Andrew College, 438 F. Supp. 2d 243 (S.D.N.Y. 2006) (applying New York law); see also EBC I, Inc. v. Goldman, Sachs & Co., 832 N.E.2d 26, 31 (N.Y. 2005) (terming the existence of a fiduciary relationship "necessarily fact-specific"). Indeed, it is difficult to delineate the bounds of when fiduciary duties can arise:

> Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another. Such a relationship might be found to exist, in appropriate circumstances, between close friends or even where confidence is based upon prior business dealings.

Penato v. George, 383 N.Y.S.2d 900, 904–05 (N.Y. App. Div. 1976).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

The "general rule" is "that fiduciary obligations do not exist between commercial parties operating at arms length." Goldman Sachs, 832 N.E.2d at 32. Put differently, "parties to a commercial contract do not ordinarily bear a fiduciary relationship to one another unless they specifically so agree." Calvin Klein Trademark Trust v. Wachner, 123 F. Supp. 2d 731, 733-34 (S.D.N.Y. 2000). "This is as true in the case of a [trademark] licensing agreement as in any other case." Id. at 734; see also Surge Licensing, Inc. v. Copyright Promotions Ltd., 685 N.Y.S.2d 175, 176 (N.Y. App. Div. 1999) ("The parties' agreement, premised as it was upon a conventional business relationship and establishing at arms length no more than routine licensing and royalties rights and obligations, did not implicate or give rise to a fiduciary relationship."). "Nor can allegations of subjective intent substitute for an absence of objective manifestation of fiduciary obligation in the contracts in question." Calvin Klein, 123 F. Supp. 2d at 734.

Nevertheless, a claim for breach of fiduciary duty can be stated where "the parties are alleged to have created their own relationship of higher trust beyond that which arises from the [] agreement alone." Goldman Sachs, 832 N.E. 2d at 32. "[I]t is not mandatory that a fiduciary relationship be formalized in writing, and any inquiry into whether such obligation exists is necessarily fact-specific to the particular case. Beyond what may be memorialized in writing, a court will look to whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge. Thus, the ongoing conduct between parties may give rise to a fiduciary relationship that will be recognized by the courts." Wiener v. Lazard Freres & Co., 672 N.Y.S.2d 8, 14 (N.Y. App. Div. 1998); see also Goldman Sachs, 832 N.E.2d at 31 ("It is fundamental that fiduciary liability is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation." (internal quotation marks omitted)).

For example, in United Feature Syndicate, Inc. v. Miller Features Synd., Inc., 216 F. Supp. 2d 198, 216–19 (S.D.N.Y. 2002), a district court applying New York law found a fiduciary relationship adequately pled where the plaintiff, a distributor of newspaper features, alleged that certain defendants, though not parties to any written agreement, held funds in trust for the benefit of the plaintiff. And in Goldman Sachs, although the court acknowledged that the underwriting contract between the investment bank and an initial public offering client may not itself have created a fiduciary relationship, a breach of fiduciary duty claim was nonetheless stated because the client alleged that it "was induced to and did repose confidence in Goldman Sachs' knowledge and expertise to advise it as to a fair IPO price and engage in honest dealings with [the client's] best

Case 2:14-cv-00598-CAS-CW   Document 36   Filed 10/20/14   Page 17 of 19   Page ID #:421

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

interest in mind." Id. The court noted that the fact that the parties had agreed to a fixed profit from the selling of the offered securities gave the client "further reason to trust that Goldman Sachs would act in [the client's] interest when advising" it on the offering price. Id. at 32. See also Ross v. FSG PrivatAir, Inc., 03 Civ. 7292 (NRB), 2004 WL 1837366, at *6 (S.D.N.Y. Aug. 17, 2004) (finding a fiduciary relationship adequately pled where the plaintiff described an agency relationship with defendant and that he "both relied on [defendant's] espoused expertise and over the course of their relationship had [defendant] negotiate with" a third party on his behalf).

  c.  Whether the Laws Differ in Relevant Respects

  Although courts applying the laws of California and New York have not used identical language, the Court finds that for purposes of this motion, the fiduciary duty laws of each state do not differ in relevant respects. In each state, fiduciary duties do not as a general rule attach to commercial agreements, including licensing agreements. Under California law, which plaintiff prefers, a standard, "mutually beneficial" business arrangement—even one involving intellectual property rights and royalties—does not, without more, give rise to fiduciary duties. See City of Hope, 43 Cal. 4th at 386-91; Wolf, 107 Cal. App. 4th at 30-34. In New York, defendants' preferred source of law, arms' length agreements including licensing arrangements do not generally give rise to fiduciary duties. See, e.g., Surge Licensing, 685 N.Y.S.2d at 176.

  But in each state, a fiduciary relationship can arise in a wide variety of contexts, including commercial ones, and determining whether fiduciary obligations exist is a fact-sensitive inquiry. See Kudokas, 26 Cal. App. 3d at 750 ("Existence of a confidential or fiduciary relationship depends on the circumstances of each case and is a question of fact for the fact trier."); Wiener, 672 N.Y.S.2d at 14 ("[I]t is not mandatory that a fiduciary relationship be formalized in writing, and any inquiry into whether such obligation exists is necessarily fact-specific to the particular case."). In each state, between commercial parties, special circumstances indicating that one party is particularly vulnerable or reasonably placed unusual trust in a contractual party must exist for fiduciary duties to arise. Courts applying California law have found such special circumstances where, for example, one of two intricately linked companies was obligated to manage trademarks on behalf of the other, who trusted in the first's trademark expertise. See Sonoma Foods, 2007 WL 3231724, at *4-5. New York courts have looked for special circumstances indicating a "relationship of higher trust" in the "ongoing conduct between parties," even if a contract between the two parties does not by itself impose fiduciary duties. See, e.g.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

Wiener, 672 N.Y.S.2d at 14; Goldman Sachs, 832 N.E.2d at 31. And New York law has allowed fiduciary duty claims to proceed where, for example, one party held the property of another in trust. See United Feature Syndicate, 216 F. Supp. 2d at 216–19.

Therefore, the Court finds that the laws do not differ for purposes of this motion. This conclusion is bolstered by the fact that neither party points to a specific difference in the laws that would require moving to the second step of the government interest analysis.[11]

   2.   Application

The Court finds that, under any of the candidate states' laws, plaintiff has adequately pled a claim for breach of fiduciary duty. Defendants are correct that, without more, an ordinary licensing agreement does not give rise to a fiduciary relationship. See 1 Eckstrom's Licensing in Foreign & Domestic Operations § 1:1 ("The lack of fiduciary relationship is what distinguishes licenses from partnerships, joint ventures or franchise relationships, in which the parties will usually owe fiduciary duties to each other."); City of Hope, 4 Cal. 4th at 386 (noting that the defendant in that case assigned patents and patent licenses to others, royalties from which the defendant owed to plaintiff, and finding that no fiduciary relationship arose); Surge Licensing, 685 N.Y.S.2d at 176 (fiduciary duties do not generally arise from licensing agreements).

However, read in the light most favorable to plaintiff, the FAC alleges more. Plaintiff alleges that, pursuant to a 1997 contract, Anjar agreed that it was not the "true

---

[11]After laying out California's choice of law test, defendants' motion goes straight to the interests of New York in having its law applied. See Mot. at 11. Defendants state that "[t]o the extent the Court considers applying the laws of other states, the result would be no different," and while defendants contend that it would be "incorrect" to apply California law "given that none of the parties has any connection to this State insofar as the Complaint is concerned," they do not identify a difference in the laws and argue that under California law, "Plaintiff still cannot state a claim." Id. at 12. Similarly, plaintiff argues that "California law should govern" because of asserted state interests, but asserts that the "breach of fiduciary claim is similarly proper under New York, Connecticut, or Delaware law," and does not specifically identify any difference between any of the laws. Opp'n at 16, 18. It may, of course, become necessary to revisit this choice-of-law issue at a later juncture.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-00598-CAS(CWx) | Date | October 20, 2014 |
|---|---|---|---|
| Title | KABUSHIKI KAISHA MEGAHOUSE v. ANJAR CO. LLC, ET AL. | | |

owner" of the OTHELLO mark, and that it was required to "convey formal legal title in the registration to MegaHouse" upon the termination of its license or if the agreement could no longer be maintained. The FAC further alleges that to "the extent Defendants have legal title to" the U.S. trademarks at issue, they "are the constructive trustees" of those trademarks, and "hold them and all property or income derived from them, on behalf of MegaHouse." Thus, plaintiff has pled that defendants were contractually obligated to hold and manage the U.S. trademarks at issue on plaintiff's behalf. Cf. Sonoma Foods, 2007 WL 3231724, at *4-5. Moreover, plaintiff points to circumstances beyond the terms of the alleged contract that could support defendants' voluntary assumption of fiduciary duties: that Becker represented that "Anjar represents the rights of" plaintiff, and that plaintiff had "appointed [Anjar] as a . . . licensing agent of the game and trademark OTHELLO." For purposes of a 12(b)(6) motion, these allegations sufficiently plead the existence of a relationship in which defendants acted not merely as arms-length participants in a standard commercial transaction, but as parties in whom plaintiff justifiably reposed an unusual degree of trust. See Wolf, 107 Cal. App. 4th at 29 (explaining that a fiduciary relationship "ordinarily arises where a confidence is reposed by one person in the integrity and fidelity of another"); Penato, 383 N.Y.S.2d at 904 ("[A] fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another.").

Given that both California and New York treat the existence of a fiduciary duty as a factual question, "it is impossible to say that plaintiff will be unable to prove the existence of a fiduciary relationship." Penato, 383 N.Y.S.2d at 905. Accordingly, the Court concludes that defendants' motion to dismiss the claim for breach of fiduciary duty should be denied.

## V.    CONCLUSION

In accordance with the foregoing, the Court DENIES defendants' motion to dismiss.

IT IS SO ORDERED.

|   | 00 | : | 20 |
|---|---|---|---|
|   | Initials of Preparer | | CMJ |